# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JUSTIN HENDERSON,**

    Plaintiff,

v.                                                 Case No. 19-CV-422

**SCOTT HOFTIEZER,**

    Defendant.

## DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Justin Henderson, a former Wisconsin state prisoner who is representing himself, filed this lawsuit under 42 U.S.C. § 1983. He asserts a claim under the Eighth Amendment against defendant Scott Hoftiezer, a doctor who worked at Dodge Correctional Institution ("DCI"). The defendant moved for summary judgment. For the reasons explained below, I will grant the defendant's motion for summary judgment and dismiss this case.

## FACTS

### *Parties*

The facts are taken from the defendant's proposed findings of fact, the defendant's declaration in support, and the transcript of Henderson's deposition. (ECF Nos. 25–27.) Henderson did not respond to the defendant's facts. For purposes of this decision, I will deem admitted the defendant's proposed facts that Henderson

has not properly contested. *See* Civil L. R. 56(b)(4); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission."). I will consider the proposed facts only to the extent they are supported by evidence in the record and will consider arguments in the supporting memoranda only to the extent they properly refer to the proposed facts. *See* Fed. R. Civ. Pro. 56(c)(1); Civil L. R. 56(b)(1)(C)(i), (b)(2)(B)(i)–(ii), and (b)(6).

Henderson entered DCI as an inmate on March 7, 2018, and on May 18, 2018, was transferred to the Jackson Correctional Institution, where he remained until his release on August 6, 2019. (ECF No. 25, ¶ 1.) Dr. Hoftiezer was a physician at DCI from March 25, 2002, through November 15, 2003, and a Physician Supervisor from November 16, 2003, through November 10, 2019. (*Id.*, ¶ 2.) He also was the Associate Medical Director of the Bureau of Health Services until November 8, 2019. (*Id.*, ¶ 3.)

### *Tuberculosis Background*

Tuberculosis is a bacterial disease that appears in infected persons in three stages: exposure, latent infection, and active disease. (ECF No. 25, ¶ 4.) Neither an exposed person nor one with a latent infection will show signs or symptoms of the disease, and neither can spread the disease to others. (*Id.*, ¶¶ 5–6.) Persons with a latent infection can be treated, and often are, to prevent them from developing an active case. (*Id.*, ¶¶ 6–7.) It is not recommended that all persons with a latent infection be treated. (*Id.*, ¶ 8.) Whether to treat depends on weighing the risk of developing an active case with the benefit of treatment. (*Id.*)

If a latent infection is not treated, a person may develop active tuberculosis. (ECF No. 25, ¶ 10.) A person with the active disease shows signs and symptoms of tuberculosis but could have a positive or negative skin or blood test for tuberculosis or a positive x-ray, biopsy, or other test for tuberculosis. (*Id.*, ¶¶ 9–10.) Only those with active tuberculosis can spread the disease. (*Id.*, ¶ 11.)

### *Tuberculosis at Wisconsin Prisons and DCI*

On March 1, 2018, the Wisconsin prison system updated its tuberculosis control program to transition away from a skin test for the disease to a blood test known as QuantiFeron Gold ("QuantiFeron"). (ECF No. 25, ¶¶ 12–13.) The traditional skin test results in many false negatives and positives for a latent infection or active disease. (*Id.*, ¶ 14.) The QuantiFeron test is far more accurate and "is considered the best screening test in this situation," but it is "not foolproof" and has a false negative rate and "a significant false positive rate." (*Id.*, ¶¶ 15, 31; ECF No. 27, ¶ 23.) The defendant states that a false negative is more likely if the patient is taking immunosuppressant medication, like Henderson was for his Crohn's disease. (ECF No. 27, ¶ 23.) Results of the QuantiFeron test must be judged in the context of the patient's overall health to determine whether tuberculosis is present. (ECF No. 25, ¶ 15.) If there is a suspected case of tuberculosis in a Wisconsin prison, the inmate is placed into isolation for observation, must wear a surgical mask, and is tested for the active disease. (*Id.*, ¶ 16.) An inmate with latent tuberculosis may be treated with a twelve-week regimen of Isoniazid and Rifapentine. (*Id.*, ¶ 17.)

The Wisconsin Department of Corrections has had several cases of latent tuberculosis in the last decade, which the defendant describes as "a common finding both in the community and in the prison system alike." (ECF No. 25, ¶ 23; ECF No. 27, ¶ 20.) The defendant reiterates that inmates with latent tuberculosis need not be isolated because they are not infectious, have no symptoms, and cannot spread the disease to others. (ECF No. 25, ¶ 24.) The defendant states that he is aware of only one active case of tuberculosis during his time at DCI, and that was in 2011. (*Id.*, ¶ 18; ECF No. 27, ¶ 17.) That inmate transferred from a jail to DCI, was known to be possibly infectious, and immediately entered isolation to avoid spreading the disease. (ECF No. 25, ¶ 18; ECF No. 27, ¶ 17.) The defendant states that he is not aware of any active cases of tuberculosis at DCI between March and May 2018, when Henderson was an inmate there. (ECF No. 25, ¶ 19.)

### *Henderson's Complaint*

Because Henderson's complaint is verified, I will consider the contentions in the complaint as I would in an affidavit for purposes of this decision. See *Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013); Ford v. Wilson, 90 F.3d 245, 246–47 (7th Cir. 1996).

Henderson states that Dr. Hoftiezer tested him for tuberculosis when he arrived at DCI, and the result was negative. (ECF No. 1 at 2.) At the time Henderson was taking prednisone for his preexisting Crohn's disease and began taking Humira for Crohn's in May 2018. (*Id.*) He states that both medications "deplete[]" his immune system. (*Id.*) After Henderson was transferred to Jackson Correctional Institution, he

4

received a positive test for latent tuberculosis, which he insists he "did not have upon arriving to prison." (*Id.* at 2–3.) Henderson states that tuberculosis has an incubation period of two to twelve weeks, so he "suspect[s] it was DCI" where he became infected. (*Id.* at 3.) Henderson states he "feel[s] that" Dr. Hoftiezer and DCI staff failed to contain an active case of tuberculosis at DCI from entering the prison's general population, and he contracted the disease while housed there. (*Id.*)

### *Henderson's Medical Records*

Henderson's medical file shows that he received the QuantiFeron test for tuberculosis on March 8, 2018, after he was admitted to DCI. (ECF No. 25, ¶ 25; ECF No. 28-1 at 45.) The defendant reiterates that the QuantiFeron test, while more accurate than the traditional skin test, has a false negative rate. (ECF No. 25, ¶ 26.) The defendant states that because Henderson lacked symptoms of a tuberculosis infection and had the negative test result, he "was most likely TB free." (*Id.*, ¶ 27.) Henderson began taking Humira for his Crohn's disease on May 8, 2018. (*Id.*, ¶ 28; ECF No. 28-1 at 13.) Humira suppresses a person's immune system and would make them more susceptible to contracting tuberculosis from someone who had an active case or to activating a latent case of tuberculosis. (ECF No. 25, ¶ 29.)

On June 20, 2018, Henderson was seen by a specialist at Gunderson Hospital about his Crohn's disease. (ECF No. 25, ¶ 30.) As part of the protocol, Henderson was given a QuantiFeron test for tuberculosis, which came back positive for the possible presence of tuberculosis. (*Id.*) A nurse practitioner at Jackson Correctional Institution assessed Henderson and found no signs or symptoms of active

5

tuberculosis. (*Id.*, ¶ 32.) The nurse practitioner concluded that Henderson's tuberculosis, if any, was likely latent. (*Id.* (citing ECF No. 28-1 at 112–116).) Henderson was quarantined, and the nurse practitioner decided to treat Henderson for any possible tuberculosis infection. (*Id.*, ¶ 33 (citing ECF No. 28-1 at 105–06, 121).) Henderson received the standard twelve-week regimen of medication given to patients with latent tuberculosis. (*Id.*, ¶ 34.) The defendant states that, after completing the twelve weeks of treatment, Henderson would have "likely been cured of any TB infection." (*Id.*, ¶ 35.) He asserts that he "do[es] not truly know if Henderson ever had [a latent infection] or not" but opines that "the decision to treat him was a wise one, given his chronic need for potent immunosuppressive medications." (ECF No. 27, ¶ 30.)

### *Henderson's Deposition*

Henderson testified that he was unaware whether anyone in his housing unit had tuberculosis or whether he interacted with anyone at DCI with the disease. (ECF No. 26 at 27:19–19, 28:25–29:2.) Nor were there any outbreaks at DCI while he was there. (*Id.* at 27:20–22.) Henderson testified that he "cannot pinpoint where it came from." (*Id.* at 27:25.) The nurses at Jackson Correctional Institution who diagnosed Henderson with latent tuberculosis told him they believed he contracted the disease "from an outside source, from way even before I went to county prison – or county jail." (*Id.* at 25:10–16.) He assumed the nurses "were trying to cover themselves . . . they don't want something like that to come back on them." (*Id.* at 25:24–26:2.) He testified that he has never had active tuberculosis. (*Id.* at 22:4–5.)

6

Henderson testified that the only side effect of his treatment was discoloration of his bodily fluids. (ECF No. 26 at 21:18–19.) The treatment did not interfere with his Crohn's disease or cause him any discomfort. (*Id.* at 21:22–24.) He was released from prison after completing the twelve-week treatment. (ECF No. 25, ¶ 38.) He testified that he has had no medical issues or pain associated with his suspected case of latent tuberculosis, nor did he incur medical expenses from the treatment. (ECF No. 26 at 21:20–21, 22:8–13, 25:6–9.) Contrary to the defendant's assertion, Henderson testified that it "was never really determined" whether his latent tuberculosis had been cured, and medical staff told him "to watch out for side effects." (*Id.* at 20:16–20.) He testified that he "hope[s]" his twelve-week treatment cured his latent tuberculosis. (*Id.* at 21:14.) He suffered "mental anguish" when he was first diagnosed but testified that his concerns have dissipated since completing treatment. (*Id.* at 23:13–24:16.)

## SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett*

7

*v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## ANALYSIS

Dr. Hoftiezer moves for summary judgment on Henderson's Eight Amendment claim arguing that: (1) He did not violate Henderson's Eight Amendment rights; and (2) He is entitled to qualified immunity.

I review Henderson's claim against Dr. Hoftiezer under the Eighth Amendment, which prohibits cruel and unusual punishments. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, Henderson must show that he was "incarcerated under conditions posing a substantial risk of serious harm." *Id.* The subjective component of an Eighth Amendment claim requires Henderson to demonstrate that Dr. Hoftiezer acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Id.* A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (citing *Farmer*, 511 U.S. at 837). In short, the evidence must evince Dr. Hoftiezer's "actual, personal knowledge of a serious risk, coupled with the lack of any reasonable response

8

to it." *Ayoubi v. Dart*, 724 F. App'x 470, 474 (7th Cir. 2018) (citing *Farmer*, 511 U.S. at 837, 844–45).

Dr. Hoftiezer asserts that Henderson cannot establish an Eighth Amendment violation because he suffered no pain or ill effects from his tuberculosis treatment. (ECF No. 24 at 9.) He contends that, even if Henderson's diagnosis of a latent tuberculosis infection caused extreme deprivations, he cannot prove that Dr. Hoftiezer had personal knowledge of a significant risk to Henderson's health or safety and was deliberately indifferent to that risk. (*Id.* at 10–11.) The defendant asserts that, at a minimum, he is entitled to qualified immunity. (*Id.* at 12–14.)

Dr. Hoftiezer misidentifies the test for whether Henderson can satisfy the objective component of an Eighth Amendment claim. The treatment Henderson received *after* his diagnosis is irrelevant. What matters is whether there was a substantial risk that Henderson would *contract* tuberculosis at DCI and whether that risk presented serious harm to Henderson.

Nonetheless, Henderson has failed to satisfy that test. It is undisputed that there have been no active cases of tuberculosis at DCI since 2011. Nor has Henderson shown that any inmate at DCI with whom he had contact had an active case of tuberculosis. He even fails to show that any inmate at DCI had a latent infection while he was housed there. Even if he had, it is undisputed that someone with a latent infection cannot spread it to others. Henderson testified that he "cannot pinpoint" where, when, or how he became infected with tuberculosis. It is undisputed that his infection could have come years ago, as the nurses at Jackson Correctional Institution

9

hypothesized, and remained dormant in Henderson until he began taking stronger immunosuppressant medications for his Crohn's disease. As Dr. Hoftiezer described, and Henderson does not dispute, it is not uncommon to find widespread latent infections in a community or prison. No reasonable jury would conclude that there was an objectively serious risk that Henderson would contract tuberculosis during his two months at DCI.

Nor is there evidence from which a reasonable jury could conclude that Dr. Hoftiezer was both aware of and deliberately indifferent to a risk that Henderson could become infected with tuberculosis at DCI. Henderson's unsupported assumption that "one of them got through the cracks" is insufficient evidence to hold Dr. Hoftiezer liable. (ECF No. 26 at 28:22–23.) The most the evidence allows is that it is possible an inmate at DCI had an active case of tuberculosis without any medical staff knowing and that Henderson had contact with that person during his two months at DCI and became infected. Dr. Hoftiezer cannot be held liable for not realizing a risk that may or may not have existed and doing more to protect Henderson from that theoretical risk. *See Farmer*, 511 U.S. at 838 (noting that "an official's failure to alleviate a significant risk that he should have perceived but did not" does not amount to cruel and unusual punishment); *Ayoubi*, 724 F. App'x at 474 (affirming dismissal of Eighth Amendment claim because plaintiff failed to provide "evidence that any defendant was personally aware" that another inmate temporarily housed with the plaintiff had a contagious illness). Because Henderson fails to satisfy

either element of an Eighth Amendment claim, Dr. Hoftiezer is entitled to judgment as a matter of law.

Henderson's claim fails on the merits, so I will not address the Dr. Hoftiezer's argument for qualified immunity. *See Sierra-Lopez v. Cty.*, No. 17-CV-1222-PP, 2019 WL 3501540, at *10 (E.D. Wis. July 31, 2019) (citing *Viero v. Bufano*, 925 F. Supp. 1374, 1387 (N.D. Ill. 1996); and *Antepenko v. Domrois*, No. 17-CV-1211, 2018 WL 6065347, at *6 (E.D. Wis. Nov. 20, 2018)).

## ORDER

**IT IS THEREFORE ORDERED** that the defendant's motion for summary judgment (ECF No. 23) is **GRANTED**.

This case is **DISMISSED**. The clerk's office shall enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal my decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. I cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under

11

Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. I cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin, this 20th day of August, 2020.

BY THE COURT:

*Nancy Joseph*

NANCY JOSEPH
United States Magistrate Judge

12

Case 2:19-cv-00422-NJ   Filed 08/20/20   Page 12 of 12   Document 36